**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| Brandon Mancilla and | ) | |
| Alexandra Vail Kohnert-Yount | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | |
| International Union, United Automobile, | ) | |
| Aerospace, and Agricultural Implement | ) | |
| Workers of America and Neil Barofsky | ) | |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT**

### **Introduction**

In the upcoming first-ever direct election for UAW Regional Directors, the plaintiff UAW members ask this Court to bar UAW and the Election Monitor from dividing up the vote of UAW Local 2320 members, a previously independent union of legal and human services workers. Such a splintering would keep Local 2320 from voting for just one Regional Director. This decision would insulate the Region 9A Director, who is responsible for approving contracts, directing International Union resources, and supervising International Representatives assigned to Local 2320, from the interests of Local 2320 members, as expressed through their vote. The decision of Defendants to divide up Local 2320's vote among different Regional Directors has the intent and effect of dissipating that vote and weakening the influence of Local 2320 and discriminates against Local 2320. Other UAW locals will cast ballots for just one Regional Director and will have a Regional Director fully accountable to the respective memberships of those locals. As a result, in violation of Section 101(a)(1) and 101(a)(2) of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411(a)(1-2), the Defendants have denied plaintiff members an equal

1

right to vote, which includes the same right as members in other locals to have leaders accountable to those local membership. This Court is expressly authorized by 29 U.S.C. § 412 to issue injunctions to prevent violations of voting rights in the period prior to union officer elections.

### Parties

1.      Brandon Mancilla is a member of UAW Local 5118, a bona fide candidate for Regional Director of Region 9A in the 2022 UAW election, and a resident of New York.

2.      Alexandra Vail Kohnert-Yount is a member of the UAW and the National Organization of Legal Service Workers (NOLSW), UAW Local 2320, a co-chair of Mr. Mancilla's campaign for Regional Director, and a resident of Texas.

3.      The International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW) is a labor organization under the meaning of 29 U.S.C. § 402(i). It is headquartered in Michigan.

4.      Neil Barofsky is a party in his official capacity as the Monitor appointed by the Court to oversee the UAW.

### Jurisdiction and Venue

5.      This court has jurisdiction of the claims under 28 U.S.C. §1331 and 29 U.S.C. §412.

6.      Venue is proper in this judicial district because the Defendant UAW is headquartered here.

### Facts

7.      On January 21, 2021, UAW entered into a consent decree with the Department of Justice.

8.      The consent decree was the result of multiple criminal prosecutions of top UAW leadership for fraud and corruption.

9.      Recognizing that "honest and duly-elected officials of the UAW are the best equipped to collectively bargain on behalf of its members and to enforce said agreements vigorously and aggressively," the consent decree mandated that a referendum would be held of the UAW membership on whether to switch from a system of electing UAW leadership through votes by delegates at convention to a one member, one vote system of direct elections.

10.     The referendum was set for October to December of 2021.

11.     Mr. Mancilla and Ms. Kohnert-Yount were both, as members of UAW, actively involved in campaigning in support of a switch to direct elections.

12.     They were both members of Unite All Workers for Democracy (UAWD), a reform caucus within the UAW that was the leading campaign force for direct elections in the referendum.

13.     On December 2, 2021, the court-appointed monitor overseeing the referendum completed counting the ballots. The final results were overwhelmingly in support of direct elections, with 63.7% in favor.

14.     Local 2320, Ms. Kohnert-Yount's local, was very supportive of direct elections, with 83.9% of its votes going for direct elections.

15.     Local 2320 was tallied as part of Region 9A's total.

16.     Local 2320 cast the second-highest number of votes in the referendum in Region 9A, over 10% of votes cast in Region 9A.

17.     Region 9A was the region that most supported direct elections, with 71.6% in favor.

18.     After the election, as UAW members began to plan for their first-ever direct elections, Mr. Mancilla, who had been elected president of his local union before, considered a run for Regional Director of his Region, Region 9A.

19.     Looking at Region 9A's support for direct elections, a number which included all of Local 2320's votes, Mr. Mancilla felt that he and the vision for the union he supported, which emerged from the same movement for union democracy that had been the chief campaigners for direct elections, had a good chance of winning over the 9A electorate that had so strongly supported direct elections.

20.     Regional Directors, officially styled as International Executive Board Members in the UAW Constitution, have many executive functions in their regions, in addition to the legislative function they have as Board members.

21.     They supervise all international staff assigned to their region (Article 14, Section 2), approve establishment and changes of local union dues (Article 47, Section 1), approve transfers of funds from local to local within their region (Article 26, Section 2), approve expenditures of local union's new member orientation fund (Article 16, Section 1), and make recommendations to the International Executive Board (IEB) on whether to appropriate international union funds to defray the expenses of a local union. (Article 18, Section 2).

22.     They make recommendations to the IEB on whether to approve or reject contracts ratified by local unions and approve the procedure by which local unions vote on contracts (Article 19, Section 3). They attempt to reach a settlement when a local union is unable to avert a strike, and they must approve any strike from a local union under their purview. (Article 50, Section 2).

23.     They oversee the creation of Education Committees within local unions and approve appointments of education representatives to those committees (Article 27, Section 5-6).

24.     Further, "only the delegates from the Local Unions in such regions shall nominate for their International Board Members." (Article 10, Section 2).

25.     Most of these executive functions flow through the local unions within a region.

26.     In July of 2022, Mr. Mancilla decided to run for 9A Regional Director.

27.     Ms. Kohnert-Yount, who had worked with Mr. Mancilla through UAWD on the referendum, and who was excited to have someone with their vision running the region her local was in, eventually became his campaign cochair.

28.     Ms. Kohnert-Yount also decided to run for delegate from Local 2320 to the UAW Convention.

29.     Local 2320 was entitled to elect up to 10 delegates to convention. Members working at Legal Services of New York City/MFJ and Heartland Alliance in Chicago elected two delegates from their own units, and the rest of the Local's membership as a whole elected six. No aspect of these at-large elections included consideration of the geographical location of these members' workplaces.

30.     The membership of Local 2320 elected four at-large delegates: Ms. Kohnert-Yount and Robert Garza, who both work at Texas RioGrande Legal Aid in Texas, Aimee VonBokel, who works at Lone Star Legal Aid in Texas, and Jordan Barbeau, who works at St. Andrew's Legal Clinic in Oregon.

31.     Region 9A organized a UAW Convention 101 for delegates, to which all Local 2320 delegates were invited. It took place on July 13, 2022, and both Region 9A Director Beverley Brakeman and Region 9A International Representative Hyacinth Blanchard were present.

32.     Ms. Blanchard is the international representative assigned to work with Local 2320. She works for Region 9A under the supervision of Ms. Brakeman.

33.     At convention, 2320 delegates, regardless of where they worked, were part of Region 9A. They registered with Region 9A, sat with Region 9A, and were part of the Region 9A

nominating meeting. They stayed in the hotel specified for Region 9A delegates. They even all got Region 9A shirts.

34.     It was at this Region 9A nomination meeting where Mr. Mancilla was formally nominated for 9A Region 9A Director. Ms. Kohnert-Yount and the other Local 2320 delegates were present for this.

35.     Based on all of this information, Mr. Mancilla, Ms. Kohnert-Yount, and the broader campaign had every reason to believe that Local 2320 members would all be voting in the election for Region 9A's Regional Director. This would have made sense, as the duties of a Regional Director flow almost entirely through the Local Union.

36.     On August 19, 2022, Robert Garza, a National Vice President of Local 2320 and the chair of her bargaining unit, called Ms. Kohnert-Yount to tell her that members of their bargaining unit would be voting in Region 8, not Region 9A.

37.     This was the first and, at that point, only indication Ms. Kohnert-Yount or Mr. Mancilla had received to suggest that Local 2320 members would not all be voting in Region 9A in the Regional Director election.

38.     By this point, with nominations having passed, it was known that Region 8 did not have a contested election.

39.     In fact, very few Regions had contested elections. The only contested elections were in Regions 1, 2B, 9, and 9A.

40.     Local 2320 delegates were not permitted to attend the convention nomination meetings, and therefore did not have an opportunity to nominate a Regional Director candidate, for any region other than Region 9A.

41.     Ms. Kohnert-Yount did not receive any written notification of Mr. Garza's contention, and so was unsure if he was speaking with any authority on this matter.

42.     Absent any written information to the contrary, and with all of the other concrete examples of all Local 2320 members being seen as part of Region 9A, Mr. Mancilla's campaign proceeded to campaign for the votes of all Local 2320 members.

43.     On September 8, Mr. Mancilla's campaign hosted a Legal Services Town Hall for members of locals in Region 9A who worked in legal services, including all members of Local 2320.

44.     The first formal indication of any sort that Local 2320 members would not be permitted to vote for the Region 9A Director came on September 21, two months after convention and 26 days before ballots are due to be sent out, when the election monitor sent Mr. Mancilla an email indicating that Local 2320 members would vote not based on their local, but on the basis of their specific worksites.

45.     The sole reason cited for this decision was a 1992 memorandum that was not readily available to the membership and which was not included as part of the email containing this decision.

46.     This memorandum was, on information and belief, available to members of the International Executive Board, including Administrative Caucus candidates running for reelection like incumbent Region 9A Director Beverley Brakeman.

47.     On September 27, 20 days before ballots were due to come out, Mr. Garza sent an email to Local 2320 members at Texas RioGrande Legal Aid stating that they would be voting in Region 8.

48.     A letter dated the same day to Local 2320 President Pamela Smith from Todd Brien, Executive Administrative Assistant, indicates that Ms. Smith had asked for clarification on where members would be voting. The letter states that the UAW will direct the election vendor to issue ballots to Local 2320 members based on their location-specific worksites.

49.     Mr. Mancilla quickly brought his concerns about this to the attention of the UAW election monitor, requesting a call within a day of receiving the email on September 21 and submitting a detailed appeal within a week.

50.     On October 7, the Monitor responded to Mr. Mancilla's appeal by refusing to change their position.

51.     Stating that the fact of "the assignment of Local 2320 members to Region 9A for the purposes of the recent Constitutional Convention," meaning that they were unable to nominate Regional Director candidates in any region other than Region 9A, was not withstanding, the monitor asserted that "Local 2320 is a uniquely autonomous, self-servicing Local Union that handles its own collective bargaining agreements and no UAW Regional Director (or International staff) has ever intervened in Local 2320 collective bargaining or grievance handling functions" as a reason for holding to their position.

52.     Plaintiffs believe this is not accurate, as Hyacinth Blanchard, an International Representative assigned to Region 9A has played a role in various functions of Local 2320 in recent years.

53.     In addition, the lack of significant support from the International Union is not a virtue of Local 2320, but a problem of an Administration Caucus-controlled IEB that Mr. Mancilla is challenging, exacerbated by an Administration Caucus Region 9A Director who is not, with

Local 2320's membership scattered to the wind, "responsive to the will of the membership." *Sheet Metal Workers v. Lynn*, 488 U.S. 347, 351 (1989).

54.     Enormous segments of Local 2320's membership work in California, Illinois, and Texas, and are, under this recent decision, affected by this recent decision.

55.     Members in these states have been assigned to vote in uncontested Region 6, Region 4, and Region 8, respectively.

56.     While membership numbers by workplace are not publicly available, according to the Monitor, 70% of Local 2320's membership work have been removed from the voter list for Region 9A, a closely contested election between two candidates with distinct visions for the union, and assigned instead to vote in other regions.

57.     By our estimates, roughly half of all of Local 2320's membership has been reassigned to vote in regions whose Regional Director elections are uncontested.

58.     The first ballots are going out on October 17, only two weeks after the monitor made a final decision on this question.

### COUNT I: Equal Right to Vote
### 29 U.S.C. §411(a)(1)

59.     Section 101 of the Labor Management Reporting and Disclosure Act ("LMRDA") states that "[e]very member of a labor organization shall have equal rights and privileges within such organization…to vote in elections or referendums of the labor organization…" 29 U.S.C. §411(a)(1).

60.     "When a union provides its membership with the right to vote on a certain matter, the right must be extended on an equal basis and in a meaningful manner." *McGinnis v. Teamsters Local 710*, 774 F.2d 196, 199 (7th Cir. 1985)

61. By denying Local 2320 members like Ms. Kohnert-Yount the right to vote over the Regional Director who oversees her local union, Defendant UAW has violated her equal right to vote under federal law.

62. Further, by denying a majority of Local 2320's membership the right to vote over the Regional Director who oversees their local union, Defendant UAW has diminished the collective voting power of this group in violation of the statute.

63. Defendant UAW's actions, in both the individual and collective denial of the equal right to vote of Local 2320 members like Ms. Kohnert-Yount, violate federal law.

64. Defendant UAW's actions harm Mr. Mancilla in removing from the list of those who, if the direct election referendum is any indication, would likely have strongly supported him.

65. Plaintiffs therefore seek the following relief:

    a. Declaratory judgment that disallowing the majority of Local 2320 members who work outside New England or eastern New York from voting for the Region 9A Director is a violation of the equal right to vote under 29 U.S.C. 101(a)(1);

    b. Ordering that all members of Local 2320 shall be sent ballots for Region 9A Director;

    c. Attorneys' fees and costs

    d. Other relief that this court may deem just and appropriate.

### COUNT II: Equal Right to Speak
### 29 U.S.C. § 101(a)(2)

66. Plaintiffs restate paragraphs 1 through 46 as if alleged herein.

67. Section 101(a)(2) of the LMRDA guarantees union members the right to "express any views, arguments, or opinions…" 29 U.S.C. §411(a)(2).

68.     The Supreme Court has held that one vital way that union members exercise their right to free speech is through electing their leadership. *Sheet Metal Workers v. Lynn*, 488 U.S. 347, 355 (1989).

69.     In scattering 70% of Local 2320 members to the voter rolls of Regions whose directors do not oversee their local, over half of whom are in regions that do not have contested elections, their ability to exercise free speech through electing leaders of their own choosing is being infringed.

70.     Plaintiffs therefore seek the following relief:

    a.  Declaratory judgment that disallowing the majority of Local 2320 members who work outside New England or eastern New York from voting for the Region 9A Director is a violation of the equal right to vote under 29 U.S.C. 101(a)(2);

    b.  Ordering that all members of Local 2320 shall be sent ballots for Region 9A Director;

    c.  Attorneys' fees and costs

    d.  Other relief that this court may deem just and appropriate.

Respectfully submitted,

Dated: October 12, 2022

By: /s/ *Ann Curry Thompson*
      One of Plaintiffs' Attorneys

Ann Curry Thompson, P27242
Kelman Loria, PLLC
18675 Bretton Drive
Detroit, Michigan 48223
(313) 736-3451

Thomas H. Geoghegan
Michael P. Persoon
Will Bloom (admission application forthcoming)
Despres, Schwartz & Geoghegan, Ltd.
77 West Washington Street, Suite 711
Chicago, Illinois 60602
(312) 372-2511